# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

       v.

ARTHUR LONG,

         Defendant.

**REPORT AND
RECOMMENDATION**
13-CR-6145

### Preliminary Statement

On September 24, 2013, defendant Arthur Long was indicted on four counts of possession of methylone with intent to distribute; use of premises to manufacture, distribute, and use controlled substances; and possession of a firearm in furtherance of drug trafficking crimes.  See Indictment (Docket # 16).  Currently before the Court[1] is a motion by the defendant to (1) suppress statements and physical evidence from searches of the defendant, his vehicle, and his residence and (2) dismiss Count 3 of the indictment.  See Docket # 24.  The Government filed papers in opposition to the motion.  (Docket # 25).

A suppression hearing was held on January 27, 2014 and continued on May 13, 2014.[2]  At the conclusion of the hearings, both the Government and defense counsel filed supplemental briefs.

---

[1] By Order of United States District Judge Frank P. Geraci, Jr., dated September 24, 2013, all pretrial motions have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)—(B). (Docket # 17).

[2] Citations to the hearing transcript of January 27, 2014 are referred to as "Tr.", and citations to the hearing transcript of May 13, 2014 are referred to as "Tr. B".

See Docket ## 35, 39, 47, 48, 55.

## Relevant Facts on Motions to Suppress

January 27, 2014 Hearing:  Investigator Jennifer Morales of the Rochester Police Department ("RPD") testified that she was the lead investigator in a narcotics investigation in which the defendant was a primary target.   Investigator Morales testified that she used a "paid informant" that she had been working with since early 2012 as part of the investigation efforts.  Tr. 23—24. Investigator Morales stated that the confidential informant ("CI") was a paid informant "that does buys or gives information in exchange for a monetary payment from the police department."  Tr. 24.  According to Investigator Morales, this CI specifically had "conducted numerous controlled purchases of which the information provided by the CI on targets, suspects, locations, [had] all been credible, reliable and correct."   Tr. 25.   With respect to the defendant, Investigator Morales testified that the CI told her about a "violent incident on July 4th weekend" in which the defendant had "entered into 35 Chi Mar and retrieved an AK-47 rifle, which was loaded, and stated to the informant that he needed it for protection down on Plymouth where he sells his ecstasy and marijuana due to the violence that had been occurring there."  Tr. 27.   The CI also told Investigator Morales about a July 9 incident in which the CI had "purchased marijuana and ecstasy from Art Long

2

at his residence at 35 Chi Mar."   Tr. 28.   Investigator Morales testified that she knew that the defendant was a former professional basketball player who drove "an older model white Cadillac."   Tr. 27.

Investigator Morales and Investigator Turner met with the CI on July 16, 2013 and arranged for the CI to buy marijuana and ecstasy from the defendant in a "controlled purchase"[3] at the defendant's residence at 35 Chi Mar Drive in the town of Chili, New York.   Tr. 5—6, 29.   On cross-examination, Investigator Morales stated that she is required to complete an expense report when taking RPD funds for a controlled purchase.   Tr. 38—39. Investigator Morales was unsure how much money in total she had paid this CI, but she recalled that she had "paid the CI on a few occasions."   Tr. 46.

On July 16, 2013, the investigators drove the CI to the area of 35 Chi Mar Drive, and just before the CI exited the undercover police vehicle, Investigator Morales "gave the CI $100 of official RPD funds."   Tr. 29, 31.   The investigators watched the CI approach the defendant's residence, and the garage door opened.   Tr. 30.

---

[3] Investigator Morales described that a "controlled purchase" occurs when officers meet with a confidential informant, provide funds for the informant to purchase whatever contraband is at issue, then send the informant to make a purchase with a suspect. Tr. 21.   After the purchase, the informant then returns to an undercover vehicle and "turns over anything that was purchased to the officers."   Id.   In most cases, the officers conduct surveillance and observe the informant making the purchase.   Tr. 21—22.

3

The investigators observed the CI in the garage with the defendant "on the other side of the driver's side door," then the CI and the defendant left the residence in the defendant's vehicle.  Id.  The investigators later picked up the CI, who gave Investigator Morales "four pills of what the CI stated was ecstasy, along with six capsules of what the CI stated was Molly, which is a pure form of ecstasy inside the capsules."  Id.  The CI stated that he had purchased the pills and capsules from the defendant.  Id.  He also told the investigators that the AK-47 firearm was back inside the defendant's residence.  Tr. 31—32.  Based on the defendant's sale of illegal narcotics to the CI, Investigator Morales testified that she believed she had probable cause to arrest him for the felony crime of criminal possession of a controlled substance in the third degree.  Tr. 32.

Investigator Morales testified that after the drugs tested positive for the presence of MDMA, she applied for a search warrant of 35 Chi Mar Drive, as well as the defendant's 1977 white Cadillac vehicle.  Tr. 33—34.  The search warrant was reviewed and signed by Monroe County Court Judge James J. Piampiano on the afternoon of July 17, 2013.  See Exhibit A, attached to Defendant's Motion to Suppress (Docket # 24).  Based on the defendant's "possession of an automatic rifle," Investigator Morales stated that the officers planned to "wait for [the defendant] to leave 35 Chi Mar Drive, to stop him before the officers executed the search warrant for their safety."  Tr. 35.

4

On July 18, 2013, law enforcement officers executed the search warrants.    Officer Carlos Rodriguez of RPD's Tactical Unit testified that on that day, he was assigned to assist in the execution of the search warrant at 35 Chi Mar Drive.    Tr. 5—6. Officer Rodriguez testified that the officers planned to execute the search warrant after the defendant had left the residence "because there was supposed to be a AK-47 in the house."    Tr. 7.

Officer Rodriguez testified that he arrived to the area of 35 Chi Mar Drive in uniform in a marked police vehicle with a partner, Officer Brian Trombley.    Tr. 5—6.    At approximately 12:30 p.m., Officer Rodriguez was directed to stop the white 1977 Cadillac the defendant was driving.    Tr. 8.    Officer Rodriguez pulled the Cadillac over in a gas station parking lot, and upon approaching the vehicle, Officer Rodriguez identified the driver as the defendant, Arthur Long.    Tr. 8—9.    With three other officers present, Officer Rodriguez asked the defendant to step out of the car, patted him down, handcuffed him, put him in the back of the police vehicle, and told the defendant that "somebody wanted to speak to him downtown."    Tr. 10, 14.    Officer Rodriguez then transported the defendant to the RPD Public Safety Building.    Tr. 10.    Officer Rodriguez testified that he was not specifically told to arrest the defendant for the narcotics sale that occurred earlier, and he instead stopped the defendant because "I was told to pull him over."    Tr. 17—18.

On cross-examination, Investigator Morales was asked about the

5

CI.  She testified that she knew the CI was an active drug user, but despite that fact, she considered the CI to be reliable.  Tr. 41–42.  Investigator Morales also testified that she had repeatedly paid the CI for supplying information about the defendant but could not remember how much money the CI was paid.  Tr. 46–47.  According to Investigator Morales, she pays informants varying amounts depending on the type of information provided, and the amount paid is "anywhere from $100 on down."  Tr. 47.  Investigator Morales testified that "[m]ost of my informants are drug users," and she keeps records of the payments made to informants.  Tr. 47, 54. Defense counsel asked for production of the payment records to this CI, and the Court ordered that the Government produce those records.  See Tr. 48.

After the January 27, 2014 hearing, the government supplied defense counsel with records regarding payments made to the CI. According to defense counsel, the records contained "discrepancies [that] call into question the truthfulness of Ms. Morales['] testimony."  See Affirmation of Robert W. Wood, Esq. (Docket # 38-1) at ¶ 12.  Defense counsel moved to reopen the hearing to allow further cross-examination of Investigator Morales, and the Court granted the request.  See Docket # 43.

May 13, 2014 Hearing: At the continuation of the hearing, Investigator Morales was further cross-examined by defense counsel regarding expense reports prepared in connection with the investigation against the defendant.  See Defendant's Exhibit B.

Investigator Morales stated that she paid the CI for the controlled buy just before the CI's interaction with the defendant, and she took the CI "to where they wanted to be dropped off" after the transaction.   Tr. B 10—11.   Investigator Morales indicated that informants typically receive "[a]nywhere from $20 to $60 for a purchase."   Tr. B 20.   Investigator Morales testified that the CI also worked for the FBI as a paid informant.   Tr. B 16.   In total, RPD and the FBI paid the CI "almost $3,000 during approximately an 18 month period."   Tr. B 23.   Over $1,900 was paid to the CI by RPD.   Tr. B 17.   Investigator Morales stated that the majority "of that money was for information more so than drug buys."   Tr. B 24. Investigator Morales described that she would occasionally pay an informant   a   "bonus,"   and   with   respect   to   the   defendant, Investigator Morales testified that she paid the CI a $100 "bonus." Tr. B 20—21.   Investigator Morales stated she knew that the CI used both   marijuana   and   ecstasy.     Tr.   B   25.     Investigator   Morales testified that she did not include the fact that the CI was paid by RPD   in   the   affidavit   she   submitted   in   support   of   the   search warrant.   Tr. B 30.

## Discussion

I. Defendant's Motion to Suppress Evidence:   The defendant seeks to suppress the evidence obtained during the search of his person, his vehicle, and his residence.   See Defendant's Motion to

Suppress (Docket # 24). For the reasons discussed below, I find that the officers had probable cause to support both the arrest of the defendant and the warrant authorizing a search of the defendant's residence and vehicle.

A. Probable Cause to Search the Defendant's Residence and Vehicle: Defendant first argues that the search warrant issued to search his residence at 35 Chi Mar Drive violated the Fourth Amendment because it was not supported by probable cause. See U.S. Const. amend. IV. Probable cause exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in the place to be searched. Ornelas v. United States, 517 U.S. 690, 696 (1996). Probable cause to search a dwelling "exists if the issuing judge finds a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Ponce, 947 F.2d 646, 650 (2d Cir. 1991), cert. denied, Gonzalez-Calas v. United States, 503 U.S. 943 (1992) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Here, the affidavit completed by Investigator Morales provided ample probable cause to believe that the items sought (narcotics, narcotics trafficking paraphernalia, and weapons) would be found in the places to be searched. After describing her twenty year experience in investigating drug crimes and her participation in over seven hundred search warrants, Investigator Morales set forth

8

in detail three recent encounters the CI had with the defendant at 35 Chi Mar Drive. See Exhibit A, attached to Defendant's Motion to Suppress (Docket # 24). The first occurred on July 5, 2013, when the CI accompanied the defendant in his Cadillac and drove to the defendant's residence. Id. at 3. The defendant went inside the home while the CI waited in the car, and after a short time, the defendant returned with a loaded AK-47 rifle and told the CI he keeps the weapon for protection as he sells ecstasy and marijuana in the South Plymouth area of downtown Rochester. Id. The second occurred on July 9, 2013, when the CI went to the defendant's residence at 35 Chi Mar Drive and purchased ecstasy and marijuana from the defendant. Id. The CI told Investigator Morales that the defendant keeps ecstasy and marijuana "up under the steering wheel of his white Cadillac." Id. Finally, on July 16, 2013, Investigator Morales met with the CI and was present when the CI called the defendant on a cellular phone to arrange a purchase of Molly and ecstasy from the defendant later that day. Id. at 3—4. The purchase, which was monitored by Investigator Morales and Investigator Turner, occurred both in the garage area of 35 Chi Mar drive and inside the Cadillac. Id. at 4. The CI paid the defendant $100 of "buy money" that Investigator Morales had given to the CI, and in return the defendant gave the CI four pills of ecstasy and six capsules of Molly. Id. During the transaction, the defendant told the CI that the AK-47 rifle "was back inside the house." Id. Investigator Morales also stated in the search

warrant affidavit that the utilities for 35 Chi Mar Drive were
registered to the defendant, Arthur Long.  Id.

The foregoing, all set forth in the affidavit submitted to
Monroe County Judge James J. Piampiano, pays tribute to a "fair
probability" that the evidence sought would be found in the
defendant's residence and vehicle.  In this Circuit, "[w]hen the
affidavit in support of the search warrant is based on information
obtained  from  a  confidential  informant,  courts  assess  the
information by examining the totality of the circumstances bearing
upon its reliability."  United States v. Canfield, 212 F.3d 713,
718 (2d Cir. 2000) (internal quotation marks omitted).  Information
provided by a confidential informant may "be sufficiently reliable
to establish probable cause" where the investigating police had
"received consistently reliable information in the past" from that
informant.  McColley v. Cnty. of Rensselaer, 740 F.3d 817, 842 (2d
Cir. 2014).  The issuing judge is required to "make a practical,
common-sense decision whether, given all the circumstances set
forth in the affidavit before him, including the veracity and basis
of knowledge of persons supplying hearsay information, there is a
fair probability that contraband or evidence of a crime will be
found in a particular place."  Gates, 462 U.S. at 238 (internal
quotation marks omitted).

It is well settled that courts conducting a review of a
judge's decision to issue a warrant must pay "considerable
deference to the probable cause determination of the issuing

10

magistrate." Walczyk v. Rio, 496 F.3d 139, 157 (2d Cir. 2007).
Here, Judge Piampiano reviewed the sworn statement of Investigator
Morales, an experienced law enforcement officer.   Investigator
Morales set forth information she had obtained from a CI whom she
had worked with since 2012.   The CI was reliable, having already
provided credible information that led to the arrest and conviction
of individuals for various crimes including murder, weapons, and
drug trafficking.   In addition, with respect to the July 13
transaction, the CI was not operating independently, but rather
engaged in a "controlled buy" that was arranged and monitored with
law enforcement participation.   "Where a confidential informant
previously has provided reliable information and where the
confidential informant has conducted controlled purchases of
narcotics, courts have found probable cause to support a search
warrant." Velasquez v. City of New York, No. 08 Civ. 08478(RJH),
2012 WL 232432, at *7 n.4 (S.D.N.Y. Jan. 25, 2012); see also United
States v. McCoy, 303 F. App'x 45, 49 (2d Cir. 2008) (probable cause
found where informant had previously provided reliable information
and where affiants to search warrant affidavit had conducted other
controlled drug purchases with informant).   I find that this
informant's participation in the incidents at issue constituted
"powerful corroborative evidence for purposes of determining
probable cause." United States v. Wagner, 989 F.2d 69, 73 (2d Cir.
1993).

The defendant's argument that Investigator Morales's failure

11

to disclose that the CI was an active drug user and was paid for providing information about the defendant tainted a probable cause finding pursuant to Franks v. Delaware, 438 U.S. 154, 171 (1978) is, under the facts present here, without merit. To be sure, false statements in a search warrant affidavit include material omissions that make the affidavit misleading. United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985). However, omitting an informant's drug use from a warrant application, in itself, is insufficient to warrant a rejection of probable cause, particularly where there has been no showing that the informant's "drug use affected their ability to provide accurate information or otherwise impacted the probable cause finding." United States v. Scott, 610 F.3d 1009, 1015 (8th Cir. 2010), cert. denied, 131 S. Ct. 964 (2011); see also United States v. Levasseur, 816 F.2d 37, 43 (2d Cir. 1987) (failure of search warrant affiant to reveal informant's drug and alcohol abuse and psychiatric problems did not defeat finding of probable cause); United States v. Heilman, 377 F. App'x 157, 178 (3d Cir. 2010), cert. denied, Napoli v. United States, 131 S. Ct. 490 (2010) (no Franks hearing required because "[t]he fact that the CI in question is a methamphetamine user does not, in and of itself, indicate that any testimony he gave was false or unreliable"); United States v. Hansmeier, No. 13-30042-2, 2014 WL 6475275, at *10 (C.D. Ill. Nov. 14, 2014) (fact that agent omitted information that he knew CI was a methamphetamine user did not vitiate probable cause finding because agent had no reason to believe CI was not

12

being truthful).

Similarly, while the fact that the CI was a paid government informant probably should have been disclosed as a factor impacting the CI's credibility, the failure to do so does not render the warrant invalid. See United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007) (finding "that an affidavit is not robbed or its probative effect by its failure to mention that the informant was a paid informant who avoided prosecution by virtue of her testimony") (internal quotation marks omitted); United States v. Wold, 979 F.2d 632, 634—35 (8th Cir. 1992) (failure to disclose that informant had been drug dealer, was cooperating with police in order to receive leniency, and was being paid by police did not amount to misrepresentation).

In sum, it was reasonable for Judge Piampiano to rely on the CI's information in issuing the search warrant. Accordingly, it is my Report and Recommendation that defendant's motion to suppress physical evidence seized pursuant to the search warrant be denied.[4]

B. Warrantless Arrest of the Defendant: The defendant also argues that "the police did not have a warrant to arrest the Defendant, nor did they have probable cause to arrest him," and therefore, any evidence derived from the initial arrest must be

---

[4] Judge Piampiano issued a search warrant for the defendant's residence and the defendant's white Cadillac vehicle. To the extent the defendant is contesting the search of his person, such a search was proper incident to arrest. See United States v. Robinson, 414 U.S. 218, 235 (1973).

suppressed.  See Defendant's Post-Hearing Memorandum of Law (Docket
# 35) at 1.    According  to  the  defendant,  he  was  stopped  and
arrested solely based on the search warrant, and the police had no
independent basis for probable cause to arrest him.   Id. at 1—2.

"A  warrantless  arrest  is  unreasonable  under  the  Fourth
Amendment  unless  the  arresting  officer  has  probable  cause  to
believe a crime has been or is being committed."   United States v.
Delossantos,  536  F.3d  155,  158  (2d  Cir.  2008),  cert.  denied,
Rodriguez v. United States, 555 U.S. 1056.    Probable cause exists
where  police  "officers  have  knowledge  or  reasonably  trustworthy
information  of  facts  and  circumstances  that  are  sufficient  in
themselves to warrant a person of reasonable caution in the belief
that  (1)  an  offense  has  been  or  is  being  committed  (2)  by  the
person to be arrested."   United States v. Fisher, 702 F.2d 372, 375
(2d  Cir.  1983).    "[T]he  probable-cause  standard  is  a  practical,
nontechnical conception that deals with the factual and practical
considerations of everyday life on which reasonable and prudent
men, not legal technicians, act.    Because  the  standard  is  fluid
and  contextual,  a  court  must  examine  the  totality  of  the
circumstances of a given arrest."   Delossantos, 536 F.3d at 159
(internal citations and quotation marks omitted); see also United
States v. Steppello, 664 F.3d 359, 363—64 (2d Cir. 2011).   Evidence
that would be inadmissible at trial may be relied on to support a
finding of probable cause.    Stansbury v. Wertman, 721 F.3d 84, 91
(2d Cir. 2013).

14

Here, the police had probable cause to believe that the defendant was involved in narcotics trafficking. Investigator Morales and Investigator Turner had met with the CI on July 16, 2013 and arranged for the CI to buy marijuana and ecstasy from the defendant in a "controlled purchase" at the defendant's residence at 35 Chi Mar Drive. Tr. 5—6, 29. The officers observed the CI approach the residence, enter the garage to meet with the defendant, emerge a short time later, and describe a drug transaction in which illegal narcotics were purchased from the defendant. Tr. 29—32. After the controlled purchase, the CI gave Investigator Morales "four pills of what the CI stated was ecstasy, along with six capsules of what the CI stated was Molly, which is a pure form of ecstasy inside the capsules." Tr. 30. The drugs were later field tested and confirmed to contain an illegal substance. Tr. 33—34. These facts are sufficient for a finding of probable cause, and the defendant's claims to the contrary are not persuasive. See United States v. Webster, 625 F.3d 439, 444 (8th Cir. 2010) (probable cause for warrantless arrest existed "even though the officers may not have witnessed actual criminal activity between the informant" and defendant); United States v. Taylor, 519 F.3d 832, 834-35 (8th Cir. 2008) (officers had probable cause to arrest defendant based on informant's tip and controlled buy); United States v. Cubias-Rivas, No. 5:09-CR-152-FL, 2009 WL 4127555, at *10 (E.D.N.C. Nov. 25, 2009) (probable cause based on controlled buy and informant's information supported warrantless arrest).

15

The defendant's contention that Officer Rodriguez had no legal authority to stop and arrest him because Officer Rodriguez was not present during the July 16 controlled buy is also without merit. Officer Rodriguez's personal participation in, or knowledge of, the controlled buy is not necessary so long as law enforcement personnel collectively had probable cause to arrest the defendant. "Under the collective or imputed knowledge doctrine, an arrest or search is permissible where the actual arresting or searching officer lacks the specific information to form the basis for probable cause or reasonable suspicion but sufficient information to justify the arrest or search was known by other law enforcement officials initiating or involved with the investigation." United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001). "The rule exists because, in light of the complexity of modern police work, the arresting officer cannot always be aware of every aspect of an investigation; sometimes his authority to arrest a suspect is based on facts known only to his superiors or associates." United States v. Valez, 796 F.2d 24, 28 (2d Cir. 1986), cert. denied, Valez v. United States, 479 U.S. 1067 (1987). The hearing testimony confirmed that Officer Rodriguez was directed to stop and detain the defendant by officers who had sufficient firsthand information that the defendant had committed a narcotics offense. Accordingly, the arrest was supported by probable cause, and the defendant's motion to suppress statements made and physical evidence seized as a result of the warrantless arrest should be **denied.**

16

**II. Motion to Dismiss Count 3 of Indictment as Impermissibly**
**Vague:** The defendant also argues that Count 3 of the indictment,
which alleges a violation of 21 U.S.C. § 856(a)(1), is void for
vagueness as applied to the defendant.  See Defendant's Motion to
Suppress (Docket # 24) at 22—23.

Section 856(a)(1) provides, "[I]t shall be unlawful to . . .
knowingly open, lease, rent, use, or maintain any place, whether
permanently or temporarily, for the purpose of manufacturing,
distributing, or using any controlled substance."   The defendant
argues that the statute is unconstitutionally vague because the
"for the purpose of" standard does not give notice to the public,
and to the defendant specifically, what is meant by "for the
purpose of."   See Defendant's Motion to Suppress (Docket # 24) at
23.

"Void for vagueness [] means that criminal responsibility
should not attach where one could not reasonably understand that
his contemplated conduct is proscribed."   United States v. Nat'l
Dairy Products Corp., 372 U.S. 29, 32-33 (1962).   The statute must
"define the criminal offense with sufficient definiteness that
ordinary people can understand what conduct is prohibited and in a
manner that does not encourage arbitrary and discriminatory
enforcement."   Kolender v. Lawson, 461 U.S. 352, 357 (1983).   While
the Second Circuit has not specifically addressed the issue of
whether § 856(a)(1) is unconstitutionally vague, other courts

17

outside this Circuit have found that the statute adequately defines the prohibited conduct in a way that provides notice to the ordinary person.   See, e.g., United States v. Shetler, 665 F.3d 1150, 1162—63 (9th Cir. 2011) (rejecting argument that § 856(a)(1) is impermissibly vague); United States v. Lancaster, 968 F.2d 1250, 1253—54 (D.C. Cir. 1992) (explaining that "[t]he 'casual' drug user does not run afoul of this prohibition because he does not maintain his house for the purpose of using drugs but rather for the purpose of residence, the consumption of drugs therein being merely incidental to that purpose," so statute cannot be construed to prohibit simple drug consumption in one's residence); United States v. Rodriguez, No. CR10-384 MJP, 2011 WL 675541, at *1—2 (W.D. Wash. Feb. 15, 2011) (Section 856(a)(1) "defines the conduct with sufficient detail to permit Defendant to know what conduct is prohibited and to guide the enforcement of the law in an orderly manner.").   I agree, and I find that the plain language of § 856(a)(1) makes one aware that using a home "for the purpose of manufacturing, distributing, or using any controlled substance" is prohibited by law.   Whether the government can prove that the defendant in fact used his residence "for the purpose of manufacturing, distributing, or using any controlled substance" is a question of fact and therefore an issue for trial. Should the defendant seek an instruction at trial defining the phrase "for the purpose of," he may make such a request to Judge Geraci before trial.   However, at this juncture, I recommend that defendant's

motion to dismiss Count 3 of the Indictment as impermissibly vague be **denied.**

## Conclusion

For the foregoing reasons, it is my Report and Recommendation that defendant's motion to suppress statements and physical evidence and motion to dismiss Count 3 of the indictment (Docket # 24) be **denied.**

SO **ORDERED.**

_____
JONATHAN W. FELDMAN
United States Magistrate Judge

Dated:      December **2**, 2014
            Rochester, New York

19

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York.[5]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b)(2) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections ... shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b)(2) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

_____
Jonathan W. Feldman
United States Magistrate Judge

Dated:     December 2, 2014
           Rochester, New York

---

[5] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).